IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GAMES WORKSHOP LTD., )
)
    Plaintiff, )
)
v. ) Case No. 04-0013-CV-W-FJG
)
BRIAN BEAL, )
)
    Defendant. )

## ORDER

Before the Court is Plaintiff Games Workshop's Submission Regarding its Claim for Monetary Relief (Doc. No. 76). Plaintiff's claims for monetary relief will be addressed below.

**I.**    **Background**

This is an action for trademark counterfeiting, trademark infringement, unfair competition, false advertising, and copyright infringement under federal, state, and common law. Plaintiff alleged that defendant is selling and has sold in the past counterfeit Games Workshop miniatures on e-Bay. The Court entered a temporary restraining order on January 6, 2004 (Doc. No. 10), preventing defendant from (among other things) "manufacturing, importing, exporting, offering for sale, promoting, advertising, selling, distributing, shipping, or transferring any counterfeit versions of Games Workshop's miniatures, and/or any non-Games Workshop gaming products bearing the marks SPACE MARINE, ELDAR, GAMES WORKSHOP, WARHAMMER, GW, 40K, or any of Games Workshop's other trademarks."

On January 16, 2004, the parties agreed to a stipulated preliminary injunction, which was entered by the Court on January 20, 2004. See Doc. No. 12. On August 19, 2004, following a hearing, the Court found defendant to be in contempt of court orders and ordered defendant to comply with a due diligence requirement on a monthly basis if he

wished to continue to sell Games Workshop products on e-Bay.

Plaintiff filed a motion for summary judgment on October 15, 2004 (Doc. No. 64), and on November 1, 2004, defendant responded that he did not oppose entry of summary judgment. See Doc. No. 68. On November 5, 2004, the Court entered an order granting summary judgment and directing plaintiff and defendant to file briefs regarding damages. See Doc. No. 72.

Additionally, in the November 5 Order, the Court directed plaintiff to file a brief as to whether plaintiff intended to pursue its claims in Count IV of its complaint for false advertising. Plaintiff responded (Doc. No. 73) that it no longer wishes to pursue these claims. Therefore, the claims in Count IV of plaintiff's complaint are hereby **DISMISSED**.

## II. Damages

Plaintiff seeks two forms of monetary relief as damages: (1) statutory damages for trademark counterfeiting in the amount of $30,000 ($15,000 for each registered mark violated), and (2) attorneys' fees in the amount of $89,389.00 and costs in the amount of $69,920.19.[1] In total, the amount of damages sought is $189,309.19.

### A. Statutory damages

Section 35(c) of the Lanham Act provides for the election of statutory damages in counterfeiting cases, providing:

> (c) Statutory damages for use of counterfeit marks
>
> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of –
>
> (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

---

[1]This amount includes local counsel fees.

> (2) if the court finds that the use of the counterfeit mark was willful, nor more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

Plaintiff believes damages in the amount of $15,000 per mark are appropriate because (1) defendant Brian Beal has refused to produce documents relating to his sale of counterfeit miniatures, and plaintiff will be unable to prove actual damages because of defendant's "deceptive" record keeping; (2) defendant has already been found in contempt of court after a full evidentiary hearing; and (3) the requested amount falls at the low end of the spectrum of statutory damages awarded in recent cases (see cases cited at Doc. No. 76, fn. 2).

Defendant responds that the Court should apply the minimum statutory damages ($500 for each mark, for a total of $1,000). Defendant notes that he was found by the Court to have violated the preliminary injunction order by reselling two game toys, each of which had been purchased for $10 and sold for approximately $20. Defendant states that he sold 6 of these toys which have been found to be counterfeit, so his gross income from the passed-on counterfeits was approximately $120, and his net income was only approximately $60. Defendant states that the statutory damages requested are out-of-proportion with the damages plaintiff incurred. Defendant also notes that, as he testified at the hearing, his record-keeping is not good, and he produced all the records he has. Defendant also reminds the Court that he is on disability.

Plaintiff replies that defendant grossly underestimates the number of counterfeit/infringing figures that plaintiff unearthed in this case. Plaintiff's expert testified that the search of Beal's residence revealed several hundred counterfeit products. (See Transcript of August 5, 2004 Contempt Hearing, at 52:14-25). Plaintiff also notes that statutory damages under 15 U.S.C. § 1117(c) are designed to compensate the trademark owner and punish the counterfeiter: "[t]he option to select statutory damages in counterfeiting cases ensures that trademark owners are adequately compensated and that

3

counterfeiters are justly punished, even in cases where the plaintiff is unable to prove actual damages because, for example, the defendant engages in deceptive record-keeping." See Senate Section-by-Section Analysis, Cong. Rec. S12084 (Aug. 9, 1995), reprinted in 50 PTCJ 425 (Aug. 17, 1995). Plaintiff also notes that defendant testified that he sometimes makes $2,700 gross per month in sales of GW miniatures, and plaintiff "suspects that Mr. Beal does not pay taxes on those earnings."

The Court finds that plaintiff's request for $30,000 in statutory damages is too much, but defendant's request for $1,000 is too little. In its discretion, the Court finds that an appropriate amount of statutory damages is $2,000 for each registered mark violated, for a total of **$4,000.00.**

      B.    Attorneys' fees and costs

Plaintiff notes that its attorneys' fees (from Washington, D.C. counsel) actually totaled **$182,282.50**, and that plaintiff's attorneys have downwardly adjusted the total request to **$89,389.00** by using the rates the Court used in its order granting attorneys' fees on plaintiff's motion for contempt. Plaintiff's costs (which include local counsel fees[2]) total **$69,920.19**.[3] Plaintiff details its monthly fees at pages 6-12 and exhibits A-M to Doc. No. 76.

In the order granting summary judgment (Doc. No. 72), the Court questioned the need for such an extensive motion, given that defendant filed no opposition and represented that he had attempted to settle the case. Plaintiff states that its motion for summary judgment was necessary because defendant refused to settle unless plaintiff paid him $10,000. Plaintiff says that because defendant never agreed to realistic terms (and never moved for a continuance of the summary judgment deadline), the motion for

---

[2]Notably, no detail was provided as to what local counsel did to incur such extensive fees; local counsel's fees in this case total $49,514.51.

[3]Upon independent calculation, the Court cannot reach the same number of costs as plaintiff has detailed; when the Court calculated the reported costs, that number it reached was $62,920.24. The Court assumes the request for $69,920.19 is a typographical error.

4

summary judgment was necessary.

Defendant responds that "[w]hile many attorneys would be reticent to announce they had cost a client that much for such a small fish as Mr. Beal, Plaintiff's counsel seems quite proud of the fact." Defendant again notes that this amount is out-of-proportion with the harm caused by Mr. Beal, and states that this amount of attorney's fees demonstrates the "extreme and inefficient nature of Plaintiff's conduct," noting that defendant has spent about $5,000 in attorney's fees, in contrast with the amount billed by plaintiff's counsel. Defendant notes that while plaintiff's counsel's records show extensive meetings, conferences, and legal research, at Washington, D.C. prices, the issues in this case were simple, statutory-based, and should have required no great time to research and file. Defendant also notes that plaintiff's last settlement offer was a demand for a consent judgment against defendant of $500,000, to which plaintiff refused to consent unless plaintiff paid him a small amount of money. Defendant also notes that the award of attorneys' fees is discretionary with the Court.[4] Defendant states that this is not an exceptional case, and attorneys' fees should not be awarded.

In its reply, plaintiff details the various motions and briefs that it filed, "all the direct result of Beal's refusal to abide by the law and this Court's orders." To this reply, defendant filed a "sur-opposition", noting that plaintiff's lengthy recitation of its pleadings and supporting papers are again cause for concern because many were unnecessary and were substantially uncontested.

After considering the parties' arguments, the Court finds that this is an exceptional case and plaintiff is entitled to a reasonable award of attorneys' fees. The U.S. Supreme Court has recognized the most useful "starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103

---

[4]See 15 U.S.C. § 1117(a), which provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party."

5

S. Ct. 1933 (1983). This result is known as the lodestar figure and is presumed to reflect the reasonable fee. See City of Burlington v. Dague, 505 U.S. 562, 120 L. Ed. 2d 449, 112 S. Ct. 2638 (1992). The Court has already applied the lodestar method in calculating the appropriate rate to be charged by attorneys Sommers, Rettew, and Kilaru in this matter when the Court considered the proper amount of attorneys' fees on plaintiff's motion for contempt. Their hourly rates have been reduced to $250, $200, and $200 per hour, respectively. Furthermore, the Court finds that the appropriate hourly rate for associate Daniel Binstock shall be $200 per hour.

In reaching the lodestar figure, however, the Court also is concerned about the number of hours reasonably expended on the litigation. The Court notes that plaintiff's counsel is seeking to recover for over 500 hours of work, not including time spent by local counsel. This amount seems to be quite excessive, especially considering that defendant Beal agreed to enter a stipulated preliminary injunction, and did not contest entry of summary judgment. Furthermore, the Court has already awarded plaintiff its attorneys' fees incurred in bringing its successful motion for contempt. The Court has considered plaintiff's monthly billing records, and makes the following downward adjustments to the hours billed by plaintiff's attorneys:

*October, 2003 (Exhibit A)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew[5] | 5.2 | 4.2[6] | $365.00 | $200.00 | $1,898.00 | $840.00 |

---

[5]Mr. Rettew is the lead attorney for the case. When the complaint was filed, Mr. Rettew was an associate at Finnegan Henderson, but since became a partner.

[6]This number has been reduced by 1.0 hours for intraoffice conferences.

6

| Daniel Binstock[7] | 16.8 | 6.8[8] | $230.00 | $200.00 | $3,864.00 | $1,360.00 |
|---|---|---|---|---|---|---|
| | | | | Total: | $5,762.00 | $2,200.00 |

*November, 2003 (Exhibit B)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 27.30 | 13.60[9] | $405.00 | $200.00 | $11,056.50 | $2,720.00 |
| Daniel Binstock | 8.3 | 0.9[10] | $250.00 | $200.00 | $2,075.00 | $180.00 |
| Mark Sommers[1] | 3.80 | 3.80 | $510.00 | $250.00 | $1,938.00 | $950.00 |
| John Hornick[12] | .4 | .4 | $510.00 | Not Claimed | $204.00 | Not Claimed |
| | | | | Total: | $15,273.50 | $3,850.00 |

---

[7] Mr. Binstock was the main associate working on the case, but has since left Finnegan Henderson. He was replaced on the case by associate Mr. Naresh Kilaru.

[8] This number has been reduced by 4.9 hours for reviewing eBay auctions and gathering evidence (items which could have been completed by a secretary or other non-billing person). This number has been further reduced by 5.1 hours for drafting of the motion for temporary restraining order because such billing appears to be duplicative of work completed by other attorneys.

[9] This number has been reduced by 13.7 hours because much of attorney Rettew's time appears to be duplicative of effort already expended (i.e., attorney Rettew reviewed and revised the same pleadings numerous times over a span of several days).

[10] This number has been reduced by 7.4 hours because plaintiff's billing records have been redacted to the point that the Court cannot determine whether the amount billed was reasonable.

[11] Mr. Mark Sommers is a senior partner with Finnegan Henderson.

[12] Mr. John Hornick is a partner with Finnegan Henderson. He consulted on certain copyright issues, but GW claims none of his time in its request for attorneys' fees.

7

***December, 2003 (Exhibit C)***

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 37.90 | 12.6[13] | $405.00 | $200.00 | $15,349.50 | $2,520.00 |
| Daniel Binstock | 5.8 | 2.2[14] | $250.00 | $200.00 | $1,450.00 | $440.00 |
| Mark Sommers | 3.4 | 3.4 | $510.00 | $250.00 | $1,734.00 | $850.00 |
| Naresh Kilaru | .2 | .2 | $230.00 | $200.00 | $46.00 | $40.00 |
| Kim Fowee[15] | 2.2 | .5[16] | $145.00 | $75.00 | $319.00 | $37.50 |
| Julia Matheson[17] | .4 | .4 | $440.00 | Not Claimed | $176.00 | Not Claimed |
| Jeannine Butler[18] | .1 | .1 | $100.00 | Not Claimed | $10.00 | Not Claimed |
| | | | | ***Total:*** | **$19,084.50** | **$3,887.50** |

---

[13]This number has been reduced by 25.3 hours because much of attorney Rettew's time appears to be duplicative.

[14]This number has been reduced by 3.6 hours because of duplicative billing.

[15]Ms. Kim Fowee is the paralegal/case manager for this matter. Plaintiff states that her rate has been reduced to $75.00 in accordance with what plaintiff understands is the going rate in St. Louis for litigation paralegals. The Court finds this is an appropriate rate for Kansas City paralegals, as well.

[16]This number has been reduced to an appropriate amount of time for producing pro hac vice forms.

[17]Ms. Julia Matheson is a partner with Finnegan Henderson. None of her time has been claimed in GW's request for attorneys' fees.

[18]Ms. Jeannine Butler is a research librarian for Finnegan Henderson. None of her time has been claimed in GW's request for attorneys' fees.

*January, 2004 (Exhibit D)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 46.70 | 29.6[19] | $405.00 | $200.00 | $18,913.50 | $5,920.00 |
| Mark Sommers | 5.8 | 1.8[20] | $510.00 | $250.00 | $2,958.00 | $450.00 |
| Kim Fowee | 10.70 | 0.0[21] | $145.00 | $75.00 | $1,551.50 | $0.00 |
| Jeannine Butler | .1 | .1 | $100.00 | Not Claimed | $10.00 | Not Claimed |
|  |  |  |  | **Total:** | **$23,433.00** | **$6,370.00** |

*February, 2004 (Exhibit E)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 10.10 | 7.5[22] | $405.00 | $200.00 | $4,090.50 | $1,500.00 |
| Mark Sommers | 1.10 | .3[23] | $510.00 | $250.00 | $561.00 | $75.00 |

---

[19] The amount billed for deposition preparation has been reduced from 21.5 hours to 10.5 hours. The remaining 25.2 hours of attorney Rettew's time has been reduced to 19.1 hours, omitting duplicative efforts.

[20] This amount has been reduced by 4 hours because almost all of the hourly charges for this month are due to intraoffice conferences.

[21] Almost all of Ms. Fowee's billings from this point forward in the monthly billing detail are for updating files. This is administrative work, not the sort of work that should be considered for attorneys' fees. Accordingly, from this point forward, Ms. Fowee's reasonable hours will be reduced to <u>zero</u> unless otherwise noted in this Order.

[22] This amount has been reduced by 2.6 hours because that amount appears to be connected with plaintiff's motion for contempt.

[23] This amount has been reduced by .8 hours because that amount appears to be connected with plaintiff's motion for contempt.

| Kim Fowee | 11.00 | 0.0 | $145.00 | $75.00 | $1,595.00 | $0.00 |
|---|---|---|---|---|---|---|
| | | | | Total: | $6,246.50 | $1,575.00 |

*March, 2004 (Exhibit F)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 44.30 | 14.1[24] | $405.00 | $200.00 | $17,941.50 | $2,820.00 |
| Mark Sommers | 5.9 | 2.7[25] | $510.00 | $250.00 | $3,009.00 | $675.00 |
| Naresh Kilaru | 14.90 | 3.7[26] | $230.00 | $200.00 | $3,427.00 | $740.00 |
| Kim Fowee | 4.5 | 0.0 | $145.00 | $75.00 | $652.50 | $0.00 |
| | | | | Total: | $25,030.00 | $4,235.00 |

*April-May, 2004 (Exhibit G)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 17.20 | 12.2[27] | $405.00 | $200.00 | $6,966.00 | $2,440.00 |

---

[24]This number has been reduced by 30.2 hours because that amount appears to be connected with plaintiff's motion for contempt.

[25]This number has been reduced by 3.2 hours because that amount appears to be connected with plaintiff's motion for contempt.

[26]This number has been reduced by 4.5 hours because that amount appears to be connected with plaintiff's motion for contempt. This number has been reduced by a further 6.7 hours because plaintiff's billing records have been redacted to the point that the Court cannot determine whether the amount billed was reasonable.

[27]This number has been reduced by 5 hours because that amount appears to be connected with plaintiff's motion for contempt.

| Mark Sommers | 1.4 | 1.4 | $510.00 | $250.00 | $714.00 | $350.00 |
|---|---|---|---|---|---|---|
| Naresh Kilaru | 1.8 | 0.0[28] | $230.00 | $200.00 | $414.00 | $0.00 |
| Kim Fowee | 11.10 | 0.0 | $145.00 | $75.00 | $1,609.50 | $0.00 |
| | | | | *Total:* | *$9,703.50* | *$2,790.00* |

*June, 2004 (Exhibit H)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 6.8 | 2.8[29] | $405.00 | $200.00 | $2,754.00 | $560.00 |
| Mark Sommers | 14.90 | 1.5[30] | $510.00 | $250.00 | $7,599.00 | $375.00 |
| Kim Fowee | 7.3 | 0.0 | $145.00 | $75.00 | $1,058.50 | $0.00 |
| | | | | *Total:* | *$11,411.50* | *$935.00* |

*July, 2004 (Exhibit I)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 26.40 | 14.7[31] | $405.00 | $200.00 | $10,692.00 | $2,940.00 |

---

[28]This number has been reduced by 1.8 hours because that amount appears to be connected with plaintiff's motion for contempt.

[29]This number has been reduced by 4 hours because that amount appears to be connected with plaintiff's motion for contempt.

[30]This number has been reduced by 13.4 hours because that amount appears to be connected with plaintiff's motion for contempt.

[31]This number has been reduced by 11.7 hours because that amount appears to be connected with plaintiff's motion for contempt.

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Mark Sommers | 4.0 | 2.5[32] | $510.00 | $250.00 | $2,040.00 | $625.00 |
| Kim Fowee | 21.4 | 0.0 | $145.00 | $75.00 | $3,103.00 | $0.00 |
| Pat Hart[33] | .7 | .7 | $170.00 | Not Claimed | $119.00 | Not Claimed |
| Brian Young-blood[34] | .6 | .6 | $145.00 | Not Claimed | $87.00 | Not Claimed |
| | | | | *Total:* | *$16,041.00* | *$3,565.00* |

*August, 2004 (Exhibit J)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 51.80 | 4.3[35] | $405.00 | $200.00 | $20,979.00 | $860.00 |
| Mark Sommers | 2.5 | 2.5 | $510.00 | $250.00 | $1,275.00 | $625.00 |
| Kim Fowee | 25.30 | .5[36] | $145.00 | $75.00 | $3,668.50 | $37.50 |
| | | | | *Total:* | *$25,922.50* | *$1,522.50* |

---

[32]This number has been reduced by 1.5 hours because that amount appears to be connected with plaintiff's motion for contempt.

[33]Ms. Pat Hart is a paralegal with Finnegan Henderson who filled in for Ms. Fowee when she was unavailable. None of her time has been claimed.

[34]Mr. Brian Youngblood is a paralegal with Finnegan Henderson who filled in for Ms. Fowee when she was unavailable. None of his time has been claimed.

[35]This amount has been reduced by 47.5 hours because that amount appears to be connected with plaintiff's motion for contempt and the contempt hearing.

[36]The Court will allow .5 hours for assisting attorney Rettew with research regarding interrogatories.

*September, 2004 (Exhibit K)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 2.0 | 2.0 | $405.00 | $200.00 | $810.00 | $400.00 |
| Mark Sommers | .3 | .3 | $510.00 | $250.00 | $153.00 | $75.00 |
| | | | | *Total:* | *$963.00* | *$475.00* |

*October, 2004 (Exhibit L)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 25.20 | 18.8[37] | $405.00 | $200.00 | $10,206.00 | $3,760.00 |
| Mark Sommers | 3.0 | 3.0 | $510.00 | $250.00 | $1,530.00 | $750.00 |
| Julia Matheson | .2 | .2 | $440.00 | Not claimed | $88.00 | Not claimed |
| Robert Litowitz[38] | 1.5 | 1.5 | $550.00 | Not Claimed | $825.00 | Not Claimed |
| Naresh Kilaru | 9.0 | 6.0[39] | $230.00 | $200.00 | $2,070.00 | $1,200.00 |

---

[37]This number, which primarily is comprised of drafting and researching the motion for summary judgment, has been reduced by 6.4 hours. The Court notes that an extensive motion for summary judgment may not have been necessary in this matter; defendant did not oppose the motion for summary judgment, and on the same day the motion for summary judgment was filed, plaintiff also filed a statement indicating that discovery was not yet complete and that it was engaging in settlement discussions with defendant.

[38]Robert Litowitz is a partner at Finnegan Henderson who was consulted on certain issues. None of his time has been claimed.

[39]This number has been reduced by 3.0 hours because such an extensive motion for summary judgment in this matter may not have been necessary.

13

| Kim Fowee | 13.00 | 2.6[40] | $145.00 | $75.00 | $1,885.00 | $195.00 |
|---|---|---|---|---|---|---|
| | | | | Total: | $16,604.00 | $5,905.00 |

*November, 2004 (Exhibit M)*

| Person | Hours Billed | Reasonable Hours | Original Billing Rate | Reasonable Billing Rate | Original Total | Adjusted Total |
|---|---|---|---|---|---|---|
| Douglas Rettew | 14.6 | 5.6[41] | $405.00 | $200.00 | $5,913.00 | $1,120.00 |
| Mark Sommers | 1.1 | 1.1 | $510.00 | $250.00 | $561.00 | $275.00 |
| Kim Fowee | 2.3 | 0.0 | $145.00 | $75.00 | $333.50 | $0.00 |
| | | | | Total: | $6,807.50 | $1,395.00 |

In short, after adding the adjusted totals for each month detailed above, the reasonable and appropriate amount of attorneys' fees to be awarded in this matter is **$38,705.00.**

With respect to costs, the Court first notes that no supporting detail was provided as to costs expended for local counsel attorney fees. These costs purportedly totaled $49,514.51. As no detail was provided as to how local counsel incurred such large fees, plaintiff's request for local counsel attorney fees (made within its request for costs) will be **DENIED.**

Second, plaintiff is seeking costs expended on computer assisted legal research, in the amount of $1,458.42. In the Eighth Circuit, such computer assisted legal research

---

[40]The Court will allow .3 hours for discussions regarding defendant's response to plaintiff's second set of document requests and 2.3 hours for assisting with the preparation of the summary judgment briefs.

[41]This number has been reduced by 9 hours for billing related to discovery issues and settlement issues incurred <u>after</u> defendant filed his response to the motion for summary judgment, therein conceding to judgment.

14

charges are to be included in an attorney's hourly rate. See Leftwich v. Harris-Stowe State College, 702 F.2d 686, 695 (8th Cir.1983) (holding that, "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award."); Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir.1993) (holding that based on Leftwich, "the law of this Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award."). Accordingly, plaintiffs' request for costs expended on computer assisted legal research will be **DENIED**.

Plaintiff's remaining requests for costs will be granted.[42] The total amount of costs granted, therefore, is **$11,947.31.**

### III. Conclusion

Therefore, for all the foregoing reasons, it is hereby **ORDERED, ADJUDGED, AND DECREED** that plaintiff is awarded final judgment against defendant in the amount of **$4,000.00**, plus attorneys fees in the amount of **$38,705.00** and costs in the amount of **$11,947.31**, for a total amount of **$54,652.31.**

**IT IS SO ORDERED.**

                                                        **/s/ FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
United States District Judge

Dated:__4/21/06____
Kansas City, Missouri

---

[42] The general categories of costs granted are for (1) telephone, postage, photocopy, mail, and miscellaneous charges; (2) graphics; (3) court reporter fees; (4) private investigator fees; (5) travel; (6) database searches; and (7) courier charges.